**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

BARBARA SUE GIBSON,

        Plaintiff,

vs.                                                 Case No. 3:16-cv-136-J-JRK

NANCY A. BERRYHILL,[1]
Acting Commissioner of Social Security,

        Defendant.
_____/

# OPINION AND ORDER[2]

## I. Status

Barbara Sue Gibson ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claim for supplemental security income ("SSI"). Plaintiff's alleged inability to work is a result of "Back/knee/neck problems" and "hand problems." Transcript of Administrative Proceedings (Doc. No. 15; "Tr." or "administrative transcript"), filed May 3, 2016, at 98, 112, 202. On May 11, 2012, Plaintiff filed an application for SSI, alleging an onset disability date of November 1, 2011.[3] Tr. at 177-87.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 16), filed May 3, 2016; Reference Order (Doc. No. 18), entered May 9, 2016.

[3] The summary of Plaintiff's application indicates Plaintiff filled out the application on May 14, 2012. Tr. at 177, 179. Plaintiff's application filing date is listed in other places in the administrative transcript as May 11, 2012, Tr. at 98, 112, and that is the date used by the Administration in denying Plaintiff's claim, Tr. at 13, 15.

Plaintiff's application was denied initially, see Tr. at 97-109, 128-35, and was denied upon reconsideration, see Tr. at 111-23, 136-41.

On April 17, 2014, an Administrative Law Judge ("ALJ") held a hearing, during which the ALJ heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 30-84. At the time of the hearing, Plaintiff was forty-one (41) years old. Tr. at 35.

The ALJ issued a Decision on June 25, 2014, finding Plaintiff not disabled through the date of the Decision. Tr. at 13-24. After the ALJ's Decision was issued, the Appeals Council received from Plaintiff, and incorporated into the administrative transcript, some additional evidence in the form of a brief authored by Plaintiff's then representative. Tr. at 4-5; see Tr. at 258-59. On December 18, 2015, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On February 11, 2016, Plaintiff commenced this action under 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff advances three arguments on appeal, contending that the following findings are not supported by substantial evidence: 1) the ALJ's finding at step two regarding Plaintiff's severe impairments; 2) the ALJ's residual functional capacity ("RFC") determination, specifically with respect to Plaintiff's mental limitations as assigned by a consultative psychologist; and 3) the ALJ's finding at step five regarding the work Plaintiff can perform. Plaintiff's Memorandum of Law in Support of a Social Security Appeal (Doc. No. 20; "Pl.'s Mem."), filed July 5, 2016, at 1, 9-12 (argument regarding step two), 12-13

(argument regarding RFC), 14 (argument regarding step five). On September 6, 2016, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 21; "Def.'s Mem.") responding to Plaintiff's arguments. After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned determines that the Commissioner's final decision is due to be affirmed for the following reasons.

## II. The ALJ's Decision

When determining whether an individual is disabled,[4] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 15-24. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since May 11, 2012, the application date." Tr. at 15 (emphasis and citation omitted). At step two, the ALJ found that "[Plaintiff] has the following severe impairments: degenerative disc

---

[4] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

disease, osteoarthritis." Tr. at 15 (emphasis and citation omitted). At step three, the ALJ ascertained that "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 17 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following RFC:

[Plaintiff can] perform light work as defined in 20 CFR [§] 416.967(b) involving lifting/carrying 20 pounds occasionally and 10 pounds frequently; and, in an 8-hour workday with normal breaks, standing 2 hours, walking 2 hours, and sitting 6 hours, with the opportunity to alternate sitting/standing positions every 30 minutes. [Plaintiff] requires the use of a cane/assistive device if she walks over 10 feet. [Plaintiff] can never climb ladders, ropes, and scaffolds, but can occasionally climb ramps and stairs, stoop, crouch, crawl, kneel, and balance. She must avoid concentrated exposure to extreme cold, vibrations, and hazards such as heights, and dangerous or moving machinery.

Tr. at 17 (emphasis omitted). At step four, the ALJ found that "[Plaintiff] is unable to perform any past relevant work" as an "[a]nimal [c]are [t]aker," a "[s]hort [o]rder [c]ook," and a "[h]ousekeeping [c]leaner." Tr. at 22 (some emphasis and citation omitted). At step five, the ALJ considered Plaintiff's age ("39 years old . . . on the date the application was filed"), education ("limited"), work experience, and RFC, and relied on the testimony of the VE to find Plaintiff is capable of performing work that exists in significant numbers in the national economy. Tr. at 22-24 (some emphasis omitted). Namely, the ALJ identified representative jobs as "[c]ashier II," "[t]icket [t]aker," and "[t]icket [s]eller." Tr. at 23. The ALJ concluded that Plaintiff "has not been under a disability . . . since May 11, 2012, the date the application was filed." Tr. at 24 (emphasis and citation omitted).

## III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

### A. Step Two

Plaintiff first contends the ALJ erred at step two with respect to the finding that Plaintiff does not have a severe mental impairment, and with respect to the failure to

address Plaintiff's "headaches and sinusitis." Pl.'s Mem. at 9 (citation omitted).  Step two of the sequential evaluation process requires the ALJ to determine whether a claimant suffers from a severe impairment. See 20 C.F.R. § 404.1520(a)(4)(ii).  At this step, "[a]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work[.]" Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984).  "[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986).  In the context of a Social Security disability benefits case, a condition is severe if it affects a claimant's ability to maintain employment. See id.  A claimant has the burden of proving that impairments are severe. See Bowen, 482 U.S. at 146 n.5 (recognizing the claimant's burden of proof at step two to show "a medically severe impairment or combination of impairments").  Further, "[t]he severe impairment either must have lasted or must be expected to last for at least 12 months." Davis v. Barnhart, 186 F. App'x 965, 967 (11th Cir. 2006) (unpublished) (citing Barnhart v. Walton, 535 U.S. 212, 216 (2002)).

A severe impairment interferes with a claimant's ability to perform "basic work activities." See Bowen, 482 U.S. at 141.  The Regulations provide six examples of "basic work activities": "(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers, and usual work situations; and (6)

Dealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b); see also Davis, 186 F. App'x at 966-67.

"The finding of any severe impairment, based on either a single impairment or a combination of impairments, is enough to satisfy step two because once the ALJ proceeds beyond step two, he is required to consider the claimant's entire medical condition, including impairments the ALJ determined were not severe." Burgin v. Comm'r of Soc. Sec., 420 F. App'x 901, 902 (11th Cir. 2011) (unpublished). To be sure, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 825 (11th Cir. 2010) (unpublished) (emphasis added); see Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987) (recognizing that "the finding of any severe impairment . . . whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe" is sufficient to satisfy step two).

There are occasions when an ALJ identifies one or more impairments at step two but does not identify all of the impairments that should be considered severe. Any omission of a particular severe impairment at step two is harmless if "the ALJ considered all of [the] impairments in combination at later steps in the evaluation process." Burgin, 420 F. App'x at 903 (citation omitted); see Heatly, 382 F. App'x at 825 (stating that an "ALJ is required to demonstrate that [he or she] has considered all of the claimant's impairments, whether severe or not, in combination"); Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984) (finding that an ALJ must make "specific and well-articulated findings as to the effect of the combination of impairments").

Here, at step two, the ALJ found Plaintiff has severe impairments of "degenerative disc disease" and "osteoarthritis." Tr. at 15 (citation omitted). Regarding Plaintiff's alleged mental impairments, the ALJ specifically found that Plaintiff's "medically determinable mental impairments of anxiety and depression, considered singly and in combination, do not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and are therefore nonsevere." Tr. at 15. The ALJ elaborated on this finding in great detail, which the undersigned discusses in Section IV.B., infra.

Regarding Plaintiff's allegations of headaches, the ALJ did not make a severity finding at step two. See Tr. at 15-17. Even if the ALJ somehow neglected to find the headaches to be severe and should have, not all of the severe impairments must be identified at step two. See Heatly, 382 F. App'x at 825; Burgin, 420 F. App'x at 903. In other words, the omission at that step is harmless as long as it is clear that the ALJ considered the headaches at later steps. See Heatly, 382 F. App'x at 825; Burgin, 420 F. App'x at 903.

It is clear the ALJ was aware of and considered at later steps Plaintiff's allegations of headaches. Specifically, the ALJ recognized at step two that Plaintiff had presented to the emergency room in November 2013 and December 2013 for headache pain. Tr. at 16 (citations omitted). In later assessing Plaintiff's RFC, the ALJ recognized Plaintiff's testimony that she has "a history of headaches and . . . that she had been treated for headaches at the emergency department." Tr. at 18 (referring to Tr. at 57). The ALJ further recognized that Plaintiff claimed she "had headaches every 3-4 weeks." Tr. at 18 (referring to Tr. at 58). The ALJ then made specific findings about Plaintiff's headaches:

> Regarding [Plaintiff's] headache complaints, treatment records from late 2013 reflect headaches associated with extensive sinusitis as shown in CT studies.

> However, there is no objective evidence of consistent or ongoing headache complaints or further evaluation of headache symptoms, which is consistent with [Plaintiff's] hearing testimony of experiencing headaches only every 3-4 weeks and the lack of subsequent treatment notes for headache complaints.

Tr. at 20 (citing Exs. 9F (Tr. at 327-53), 10F (Tr. at 354-68)).  These findings are supported by substantial evidence in the administrative transcript.  See, e.g., Tr. at 379, 388, 392, 397, 401, 405, 409, 414, 421, 428, 433, 442 (treatment notes dated May 2013 through April 2014 consistently documenting no headaches).

Given the lack of documentation of consistent headaches, the ALJ elected not to include in the RFC any limitations that are specifically attributable to Plaintiff's headaches.  See Tr. at 17.  Nevertheless, the limitation of "avoid[ing] concentrated exposure to extreme cold, vibrations, and hazards such as heights, and dangerous or moving machinery," Tr. at 17 (emphasis omitted), would certainly benefit one who suffers from headaches.  The RFC, as it relates to Plaintiff's allegations of headaches, is supported by substantial evidence.

Plaintiff contends she has been referred to a neurologist for the headaches but is unable to afford that type of treatment.  Pl.'s Mem. at 11.  The ALJ found in the Decision, however, that Plaintiff "has not provided evidence that she sought treatment at low- or no-cost treatment facilities or was denied treatment because of a lack of funds."  Tr. at 20.  The ALJ further found, "[Plaintiff] apparently had resources for cigarettes and marijuana."  Tr. at 20.  These findings are supported by substantial evidence in the administrative transcript.  See, e.g., Tr. at 339, 392, 397, 401, 405, 409, 414, 421, 428 (referring to Plaintiff's smoking one-half a pack of cigarettes per day for thirty years), Tr. at 313 (referring to Plaintiff's

positive drug test in August 2012 while under pain management care with her primary physician and her physician's instructions to cease prescribing controlled substances[5]).

## B.  RFC / Consultative Examiner's Opinion Regarding Mental Limitations

Plaintiff next contends the ALJ erred in assigning limited weight to the opinion of Chris J. Carr, Ph.D., a consultative psychologist, and then omitting from the RFC the limitations that Dr. Carr assigned.  Pl.'s Mem. at 13.

The Regulations establish a "hierarchy" among medical opinions that provides a framework for determining the weight afforded to each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)).  The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization."  20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

---

[5]  The ALJ noted that after Plaintiff's primary care physician stopped prescribing controlled substances in August 2012, "[t]here is no documentation of further treatment until May 2013, when [Plaintiff] presented for pain management services in Tampa, noted to be nearly 150 miles from her home. [Plaintiff] testified that she could sit only 15 minutes at one time, yet she apparently tolerates a 2+ hour car ride to Tampa each month for treatment."  Tr. at 20 (citation omitted).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. 1981) (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." Winschel, 631 F.3d at 1179 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)); see also Cranford v. Comm'r of Soc. Sec., No. 6:13-cv-415-Orl-GJK, 2014 WL 1017972, at *4 (M.D. Fla. Mar. 17, 2014) (unpublished) (stating that "[w]eighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential evaluation process for determining disability").

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1545(a)(5). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's

impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)).

Here, Dr. Carr performed a consultative psychological examination of Plaintiff on August 3, 2012 and issued a detailed report on August 16, 2012. See Tr. at 301-05. Plaintiff reported to Dr. Carr that she was unable to "afford [her] pain doctor," Tr. at 301, although this examination occurred in the same month that Plaintiff's primary care doctor stopped prescribing controlled substances due to a failed drug test, see Tr. at 313. Despite Plaintiff reporting that she had been "taking antidepressants since the early 1990's" due to feeling depressed, Tr. at 301-02, Dr. Carr did not diagnose depression or anxiety, Tr. at 304. Instead, he diagnosed "Pain Disorder with Medical Factors." Tr. at 304. Dr. Carr continued, "Based on her observed behavior during the interview, she appears to have moderately to seriously limited capacity in the areas of understanding and memory, concentration, persistence, social interaction and adaptation to perform work for which she is suited." Tr. at 305. As the main support for this finding, Dr. Carr wrote:

> [Plaintiff] appears to be in constant pain as evidenced by her constant shifting. She looks fatigued. Her problems appear physical/medical. She appears unlikely to persevere in activities due to pain. She seemed to become increasingly restless. The session appeared to take serious effort to endure.
>
> She may benefit from pain management.

Tr. at 305. As noted supra at page 10, note 5, by May 2013, Plaintiff indeed started attending pain management sessions with a physician in Tampa, Florida. Tr. at 441.

The ALJ assigned "limited weight" to Dr. Carr's opinion, "as it was based on [Plaintiff's] presentation at a one-time evaluation, and primarily reflects limitations based on [Plaintiff's] physical condition, which is not Dr. Carr's area of expertise. Further, [Plaintiff's] presentation at this consultative examination is not consistent with the clinical observations recorded by [Plaintiff's] treating healthcare providers." Tr. at 16. The ALJ went on to assign "some weight" to two non-examining state agency psychologists' opinions that Plaintiff's "mental impairments were not severe." Tr. at 16 (citing Exs. 2A (Tr. at 103-04), 4A (Tr. at 116-17)).

In terms of the four broad functional areas for evaluating mental disorders, the ALJ found as follows. Plaintiff has no limitation in activities of daily living; Plaintiff has no limitation in social functioning; Plaintiff has mild limitation in concentration, persistence, or pace; and Plaintiff has experienced no episodes of decompensation of extended duration. Tr. at 16-17. The ALJ concluded, "Because [Plaintiff's] medically determinable mental impairments cause no more than 'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation which have been of extended duration in the fourth area, they are nonsevere." Tr. at 17 (citing 20 C.F.R. § 416.920a(d)(1)).

The ALJ's findings are supported by substantial evidence in the administrative transcript. The undersigned notes that evidently, after Plaintiff sought pain management treatment in Tampa, her ability to maintain concentration and endure examination improved. See generally Tr. at 377-444. The ALJ's findings regarding Plaintiff's mental impairments and their lack of severity need not be disturbed.

In terms of the mental limitations at later steps, the ALJ recognized that his findings in the three broad functional areas "are not a [RFC] assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." Tr. at 17.  The ALJ then correctly stated that the "mental [RFC] assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p)." Tr. at 17.  The ALJ concluded that the RFC "reflects the degree of limitation [the ALJ] found in the 'paragraph B' mental function analysis."  Tr. at 17.

The RFC does not contain any mental limitations. Tr. at 17.  When read together with the ALJ's recognition that he had to consider the mental impairments at steps four and five, however, the ALJ did not err in assessing Plaintiff's RFC.  Indeed, the ALJ considered whether Plaintiff's non-severe mental impairments have any effect on her ability to perform work; by electing not to include any mental restrictions in the RFC, he found they do not. For largely the same reasons that the non-severe finding is supported by substantial evidence, this finding is as well.

**C. Step Five**

Plaintiff's argument with respect to step five of the sequential inquiry is based solely on the alleged points of error in previous steps. Pl.'s Mem. at 14.  Because the undersigned finds no reversible error in previous steps, Plaintiff's step five argument necessarily fails.

## V. Conclusion

After due consideration, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), **AFFIRMING** the Commissioner's decision.

2. The Clerk of Court is directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on February 27, 2017.

*[signature: James R. Klindt]*
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of record